IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 21, 2019

## JAMES BOSTIC, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2013-C-2607     Steve Dozier, Judge**

_____

### No. M2018-01369-CCA-R3-PC

_____

The petitioner, James Bostic, Jr., appeals the denial of his petition for post-conviction relief, which petition challenged the revocation of the community corrections placement for his 2014 guilty-pleaded conviction of the sale of cocaine. In this appeal, the petitioner claims entitlement to post-conviction relief on grounds that he was deprived of the effective assistance of counsel at the community corrections revocation hearing. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Eugenia R. Grayer, Madison, Tennessee, for the appellant, James Bostic, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Kim R. Helper, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Davidson County Grand Jury charged the petitioner with one count of the sale of .5 grams or more of cocaine in a drug free school zone, one count of evidence tampering, one count of simple possession, and one count of resisting arrest. Pursuant to a plea agreement with the State, the petitioner pleaded guilty to the lesser included offense of the sale of less than .5 grams of cocaine in exchange for a Range III sentence of 12 years to be served in a community corrections placement and dismissal of the remaining charges. A community corrections violation warrant issued in October 2016, and, following a hearing, the trial court revoked the petitioner's community corrections placement on October 26, 2016, and ordered that he serve the balance of his 12-year

sentence in confinement.  *See James Edward Bostic, Jr. v. State*, No. M2017-00087-CCA-R3-PC, slip op. at 1 (Tenn. Crim. App., Nashville, Aug. 9, 2017).  On December 12, 2016, the petitioner filed a petition for post-conviction relief, arguing that he had been deprived of the effective assistance of counsel at the revocation hearing.  The post-conviction court summarily dismissed the petition as untimely, and the petitioner appealed.  On appeal, this court determined that the post-conviction court erred by dismissing the petition as untimely because the claims in the petition related to the October 2016 revocation hearing and remanded the case for further proceedings.  *See id.*, slip op. at 2.

Upon remand, the post-conviction court appointed counsel, and the petitioner filed an amended petition for post-conviction relief, alleging that the attorney who represented him at the revocation hearing performed deficiently by failing to "be aware of (through experience, training or research) the law applicable to [the petitioner's] case"; by failing "to investigate all means of drug and mental health treatment available to" the petitioner; by failing "to properly investigate relevant issues" in the case; failing to interview, investigate, and call witnesses "who may have aided in the mitigation of his sentencing"; and by failing to interview and investigate the State's witnesses.  The petitioner asked that he be granted a new hearing on the merits of the community corrections revocation warrant.

At the May 2018 evidentiary hearing, counsel testified that he was appointed to represent the petitioner at the community corrections revocation proceeding on October 26, 2016, the same day as the scheduled hearing.  Counsel testified that he spoke with the petitioner for approximately 45 minutes "on and off" and that he spent an hour and a half to two hours on the case.  Counsel recalled that the "first thing" the petitioner "wanted to do was put his sentence into effect."  Counsel said that he asked the petitioner to "at least give [counsel] the opportunity to talk to the DA, . . . talk to probation, investigate the violation a little bit."  The petitioner acquiesced, so counsel spoke "with probation" and learned that the petitioner "had already completed" the available mental health and drug treatment programs "and that was not an option."  Counsel said that "that was as far as it got with trying to figure out what could be done" because the assistant district attorney "wasn't making any offer other than to concede or have the hearing."  Counsel relayed this information to the petitioner and asked the petitioner to "at least give [counsel] an opportunity to reset it to have a hearing."  The petitioner adamantly refused, "and it was his decision to go ahead and put his sentence into effect."

Counsel testified that the petitioner did not tell him about any specific mental health issues and did not tell him anything about having developmental disabilities, saying, "[A]t no time during that discussion did he make me aware of any

kind of developmental disability other than mental health issues, which could span the gamut . . . ." The petitioner did tell counsel "that he was on his meds." He said that the petitioner did not appear frustrated and was instead "very calm about the situation." He recalled that they "had a good conversation, a good back and forth." Counsel testified that he had previously represented other individuals with a variety of mental health issues and that the petitioner "seemed like he was fine." Counsel said that the petitioner's desire to have his sentence put into effect did not seem strange, explaining, "I guess if any client has a significant number of jail credits they may want to go ahead and put the sentence into effect." Counsel reiterated, however, that he "kept trying to talk [the petitioner] out of going ahead and putting the sentence into effect that day" so as to allow counsel "to investigate his case a little more and get a new date before going any further," but the petitioner instructed him "to forgo that option."

Counsel spoke to the petitioner's probation officer, who told him about "the mental health program and the drug program that he had already completed." Counsel said that, "because we never got to the point of going into a hearing," he did not get an opportunity "to investigate any options other than the fact that [the petitioner] had already completed mental health court and drug court." He said that it was possible that, had he been allowed to spend more time with the petitioner, the result of the proceeding might have been different.

During cross-examination, counsel reiterated that he asked the petitioner to let him "continue the case because he wasn't going to get any worse" result following a continuance, but the petitioner "instructed [counsel] to put his sentence into effect." Counsel said that he had several conversations with the prosecutor in which he attempted to get the prosecutor to agree to "split confinement or anything that would allow [the petitioner] to serve less than 12 years in prison," but the prosecutor would not agree. Counsel said that nothing in the petitioner's behavior, including his asking to have his sentence placed into effect, led counsel to believe that he needed to ask the court for a forensic evaluation. He added during redirect examination, "Given the fact that he was on his medication[] and given the fact that we were having a very open conversation, I didn't think anything odd about him wanting to put his sentence into effect. It seemed like he was informed."

Counsel said that the petitioner did not tell him that he was being mistreated at the jail or that he had a history of having been abused. Counsel did not ask the petitioner what medication he was taking at the time of the hearing.

The petitioner testified that he had been deprived of his medications from the time he was taken into custody to the day of his revocation hearing. He said that, without his medication, he suffered from anxiety, hallucinations, paranoia, and delusions.

-3-

The petitioner said that he had been diagnosed with autism, schizophrenia, mental retardation, anxiety disorder, "paranoid current illness," schizoaffective disorder, "[a]nd the list goes on." The petitioner added that he also suffered from substance abuse issues and admitted that he was using drugs when his community corrections placement was revoked in October 2016. He said that, because of his disabilities, he "was picked on all of my life and picked with. And I'm still getting picked with now. Even just today I was picked on." He insisted that he had been mistreated throughout his incarceration.

The petitioner said that after a relapse into drug use, he contacted his community corrections officer, who "told for me to go into inpatient treatment." He said that he contacted "Park Center" and was informed in July 2016 that "it was okay for me to come to their program upon release." He exhibited to his testimony a letter from "Park Center" informing him that he had been approved for the Co-Occurring Outpatient Program and that he should contact the intake coordinator "[u]pon release." The petitioner said that he "had that letter along with other records from different center[s] as well as halfway houses" where he had been accepted. He said that he had been trying to get into a treatment program before the revocation hearing.

The petitioner denied telling counsel that he wanted his sentence put into effect. He said that he only agreed to the revocation because he "felt like I didn't have any help, support or choice." The petitioner acknowledged that counsel spoke with the prosecutor and then told him that the prosecutor would not agree to anything other than the petitioner's serving the remainder of his sentence in confinement. He claimed that, after that, counsel said "that he was not my lawyer," saying, "[Counsel] came back out the last time and he said James, I'm not your lawyer. I'm not appointed to your case. You have another lawyer who is assigned to your case . . . ." He said that counsel gave him the name of another attorney who was allegedly assigned to the case and that that attorney "couldn't possibly be the lawyer" because he had not represented the petitioner and because the attorney "was under a BPR investigation for a conflict that we were having regarding my postconviction previously . . . where I was trying to come back and get relief on the original charges regarding that case number."

The petitioner also claimed that, on the day of the hearing, he "was also hearing voices a little bit" but did not alert the court to his issues because "there was nothing that [the judge] would listen to at that point." The petitioner said that counsel "made me feel very comfortable . . . in the beginning." He recalled counsel's frustration, saying, "[Y]ou know, he don't know what else to do and he can only, you know, try to get me here or get me there. And I felt that that was not something I wanted to -- that I thought was -- needed to be done." Instead, the petitioner wanted to "release information about what had happened before my arrest and after my arrest" because it "was damning

-4-

and important." The petitioner could not recall whether he had told counsel that he was taking his medication.

The petitioner maintained that he had sought post-conviction relief from the community corrections revocation "to try to hopefully get relief so that . . . you all can hopefully see that . . . I really am going to try to help myself this time and I don't want to go through what I'm going through because it's too much on me." He said that he was "going through a die-hard situation medically and mental-health wise" and that both his physical and mental health were suffering due to the level of care he was receiving in prison. The petitioner exhibited to his testimony letters from various treatment programs indicating that he had been accepted "upon my release."

During cross-examination by the State, the petitioner agreed that he had previously been convicted of eight felonies, including two aggravated burglaries, two attempted aggravated burglaries, and a burglary.

Dawn Harper, a case officer with Davidson County Community Corrections, testified that she supervised the petitioner for "part of 2015 all of the way to 2016." She did not "have any official records" but recalled that the petitioner "does have some records somewhere with some developmental [disabilities] listed." She said that the petitioner told her that he had schizoaffective disorder and that she was aware of his substance abuse. Ms. Harper recalled that she had referred the petitioner to Park Center and that "he only made it to one appointment." She said that the petitioner had previously been placed in Bill's Halfway House, Ann Betts' House, and Transitions. Ms. Harper said that her last communication with the petitioner occurred "[a]bout six or seven months ago" in the form of "a jail call and he was upset . . . I guess he had an upcoming court date or something and he was supposed to do RDAP. He was a little upset about it." She testified that, during that call, the petitioner told her that jail officials had refused to give him his medication and that she had encouraged him "to follow the correct path" to obtain his medication. She added, "So at that point, I do not believe he was medically compliant."

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In its written order denying relief, the post-conviction court found that counsel "did not investigate the [p]etitioner's case in detail" but concluded that counsel's "lack of investigation in this case was the direct result of his fulfillment of the [p]etitioner's expressed desires." The court "recognize[d] that the [p]etitioner may now regret his decision to place his sentence into effect." The court accredited counsel's testimony "that he tried to persuade the [p]etitioner to continue the case to allow him time to prepare for a hearing or develop some sort of potential release plan." The court

-5-

determined that counsel did not perform deficiently by expressly complying with the petitioner's desire to have his sentence placed into effect.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that his counsel performed deficiently by failing to spend sufficient time investigating the case and, as a result, failed to discover issues related to the petitioner's mental health issues and developmental disabilities. He argues that, had trial counsel performed an adequate investigation, counsel would have learned that the petitioner had been accepted to a variety of treatment programs.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v.*

-6-

*State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Counsel's accredited testimony established that the petitioner adamantly opposed a continuance in the case and insisted that his sentence be placed into effect. The evidence also established that counsel did not observe any behavior that suggested that the petitioner was suffering from mental health or developmental disabilities at the time of the hearing. Moreover, the petitioner did not actually tell counsel about his issues. Counsel cannot be deemed deficient for failing to investigate these issues when the petitioner never brought them to counsel's attention. Contrary to the petitioner's assertion, counsel's duty to investigate these issues was entirely dependent upon the petitioner's divulging them to his counsel. Although counsel admitted that he only spent a short time on the petitioner's case, he testified that he advised the petitioner to allow him to ask for a continuance so that he could have more time to investigate. The petitioner refused. It is unclear how counsel was supposed to find out about the petitioner's various issues as well as investigate treatment programs when the petitioner adamantly refused to continue the case. Given that the petitioner failed to disclose any mental health issues and that nothing in his behavior on the day of the hearing suggested that he was not competent to make his own decisions, trial counsel was required to facilitate the petitioner's request that his sentence be placed into effect. The petitioner may not now be heard to complain because counsel did exactly as he asked.

Moreover, no evidence suggested that, had counsel conducted a further investigation, the result of the proceeding would have been different. The petitioner acknowledged that he was using drugs in October 2016 in violation of his community corrections placement and did not at any point suggest that he had not, in fact, violated the terms of his community corrections placement. Instead, the petitioner complained about the circumstances of his incarceration and expressed a desire to be released into a treatment program in lieu of incarceration. Under these circumstances, the trial court did not err by denying post-conviction relief.

Based upon the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE